UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEXAS CIVIL RIGHTS PROJECT<br>1405 Montopolis Dr<br>Austin, TX 78741<br><br>INSTITUTE FOR CONSTITUTIONAL<br>ADVOCACY AND PROTECTION<br>600 New Jersey Ave NW<br>Washington, DC 20001,<br>　　　　Plaintiffs<br>　　　　　　v.<br><br>UNITED STATES CUSTOMS AND<br>BORDER PROTECTION<br>1300 Pennsylvania Ave NW, Suite 4.4-B<br>Washington, D.C. 20229,<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY<br>2707 Martin Luther King Jr Ave SE<br>Washington, D.C. 20528,<br><br>UNITED STATES IMMIGRATION AND<br>CUSTOMS ENFORCEMENT<br>500 12th Street SW<br>Washington, D.C. 20536,<br><br>　　　　Defendants. | Case No.: 1:20-cv-2389<br><br>COMPLAINT |

1.　　Since at least the start of the COVID-19 pandemic, Defendant Department of Homeland Security (DHS), through Defendants Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP), has expelled thousands of unaccompanied and

undocumented children without providing them with any legal process.[1] DHS has carried out these expulsions largely in secret. But what is known is troubling. Most children crossing the border alone are not transferred to the Office of Refugee Resettlement.[2] Instead, DHS has contracted out the care of young children to private contractors with uncertain credentials.[3] These contractors detain children in secret locations, including hotels across Texas, while shelters built specifically for the purpose of temporarily housing such children sit empty.[4] Many of these children do not get an opportunity to consult with attorneys or reunite with family members prior to expulsion.[5] Instead, DHS rushes to expel the thousands of unaccompanied and undocumented children who have arrived since the start of the pandemic to countries where many fear persecution.[6]

   2.  In public statements, Defendants have asserted that expulsion—rather than the normal deportation (or "removal") process—is necessary because immigrant children pose a public health risk as potential spreaders of COVID.[7] DHS terms these "Title 42 Expulsions" after 42 U.S.C. § 265, the public health law that supposedly grants Defendants the authority to deprive children of their right to due process.[8] But DHS is not merely expelling undocumented children who

---

[1] *See* Lomi Kriel, *Federal agents are expelling asylum seekers as young as 8 months from the border, citing COVID-19 risks*, Texas Tribune and ProPublica, August 4, 2020, texastribune.org/2020/08/04/border-migrant-children-hotels/.

[2] *See* Caitlin Dickerson, *10 Years Old, Tearful and Confused After a Sudden Deportation*, New York Times, May 21, 2020, https://www.nytimes.com/2020/05/20/us/coronavirus-migrant-children-unaccompanied-minors.html?searchResultPosition=1.

[3] Nomaan Merchant, *Migrant Kids Held in US Hotels, Then Expelled*, AP, July 22, 2020, https://apnews.com/c9b671b206060f2e9654f0a4eaeb6388.

[4] *Id.*

[5] Lomi Kriel, *The Trump Administration is Rushing Deportation of Migrant Children During Coronavirus*, ProPublica, May 18, 2020, https://www.propublica.org/article/the-trump-administration-is-rushing-deportations-of-migrant-children-during-coronavirus.

[6] *Id.*

[7] *See* Dickerson, *supra* note 2.

[8] U.S. Customs and Border Protection, *Nationwide Enforcement Encounters: Title 8 Enforcement Actions and Title 42 Expulsions*, https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/title-8-and-title-42-statistics.

test positive for COVID on arrival; it is also expelling children who do not have COVID.[9] Indeed, according to recent reporting, DHS is *only* expelling children who have tested negative—i.e., children who do not pose a public health risk.[10]

3. Plaintiffs Texas Civil Rights Project (TCRP) and the Institute for Constitutional Advocacy and Protection (ICAP) have submitted three Freedom of Information Act requests to Defendant agencies to obtain more information about the treatment of unaccompanied children who have crossed the border in recent months. They have sought records that encompass, among other things, the standards used to determine whether unaccompanied and undocumented children are immediately expelled or are allowed to apply for humanitarian relief; statistics on how many children have been expelled and to where; the as-of-now secret locations where DHS detains children prior to Title 42 expulsion; and the identity of companies that Defendants have contracted with to transport and detain children.

4. Plaintiffs' requests for the transparency afforded by federal law have been met with silence. None of the agencies has produced any record within the applicable statutory time limit imposed by 5 U.S.C. § 552.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6. Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

---

[9] Caitlin Dickerson and Kirk Semple, *U.S. Deported Thousands Amid COVID-19 Outbreak. Some Proved to Be Sick.*, New York Times, Apr. 18, 2020, https://www.nytimes.com/2020/04/18/us/deportations-coronavirus-guatemala.html.
[10] Dara Lind & Lomi Kriel, *ICE IS Making Sure Migrant Kids Don't Have COVID-19—Then Expelling Them to "Prevent the Spread" of COVID-19*, ProPublica, August 10, 2020, https://www.propublica.org/article/ice-is-making-sure-migrant-kids-dont-have-covid-19-then-expelling-them-to-prevent-the-spread-of-covid-19.

**PARTIES**

7. Plaintiffs TCRP and ICAP are the requestors of the records that Defendants DHS, ICE, and CBP are withholding. TCRP is a non-profit and nonpartisan 501(c)(3) organization committed to ensuring civil rights and the protection of law within Texas. TCRP publishes press releases, opinion pieces, reports, and policy papers. It disseminates information through its website, txcivilrights.org. ICAP is a non-profit legal institute based at Georgetown University Law Center whose mission is to use the power of the courts to defend American constitutional rights and values. ICAP publishes press releases, opinion articles, and reports. TCRP's and ICAP's requests were made to inform the public's understanding of the government's operations and activities and not for any commercial use.

8. Defendants DHS, ICE, and CBP are federal agencies within the meaning of 5 U.S.C. § 552(f)(1) and are headquartered in Washington, D.C.

**FACTS**

**I.   Background**

9. In March 2020, the Centers for Disease Control (CDC) promulgated an order directing that all undocumented immigrants, including unaccompanied children, apprehended at the border be removed from the country immediately.[11] The CDC's stated basis for the order has been that undocumented immigrants could increase the spread of COVID in the United States.[12] When the order went into effect in March, the United States already had more than 17,000 COVID cases.[13] Central American countries in the "Northern Triangle" countries of El Salvador, Guatemala, and

---

[11] Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17061 (Mar. 26, 2020).
[12] *Id.*
[13] Zolan Kanno-Youngs and Kirk Semple, *Trump Cites Coronavirus as He Announces a Border Crackdown*, New York Times, Mar. 27, 2020, https://www.nytimes.com/2020/03/20/us/politics/trump-border-coronavirus.html.

Honduras, where most foot-traffic at the border originates, had fewer than 300 confirmed cases.[14] Even within those countries, the order did not exclude all immigrants—only undocumented ones.[15] Immigrants with valid visas coming by foot or air travel could still enter.[16] The CDC did not explain why undocumented immigrants posed more of a public health risk than documented ones. But its order did purport to allow DHS to start expelling undocumented children, whether or not they tested positive for COVID upon arrival.[17]

10. To implement this order, DHS, through CBP, implemented "Operation CAPIO." Under Operation CAPIO, CBP has, among other things, expelled unaccompanied and undocumented children without any legal process. In effect, Operation CAPIO denies most unaccompanied and undocumented children the opportunity for humanitarian relief such as asylum, withholding of removal, or Convention Against Torture relief.

11. Defendants carry out these expulsions, sometimes in the middle of the night, without contacting children's family members. The effect of removal is to force children to return to countries where many may be persecuted or tortured.[18]

12. Prior to the records request ICAP made in May, CBP expelled at least 915 unaccompanied and undocumented children shortly after they entered the U.S. At that time, CBP had allowed only 166 unaccompanied and undocumented children to remain in the U.S. and apply for humanitarian relief.[19] Now, the number of children expelled without process has climbed to at least 2,000.[20]

---

[14] *Id.*
[15] Notice of Order, *supra* note 11.
[16] *Id.*
[17] *See* Kriel, *supra* note 5.
[18] *See* Dickerson, *supra* note 2.
[19] *Id.*
[20] Merchant, *supra* note 3.

13. In a New York Times article published on May 20, 2020, a CBP public affairs agent, Matthew Dyman, asserted that CBP has standards to differentiate between which unaccompanied children are allowed to apply for relief and which are immediately removed from the country.[21]

14. He refused to disclose those standards that have now determined the fates of thousands of children.

15. DHS is not allowing children to consult with an attorney prior to expulsion. It is not even keeping children in the shelters built for that purpose. Instead, DHS has contracted private agents to keep children locked in hotels across the Southern border.[22] DHS refused to say if these contractors have security clearance or are licensed to work with vulnerable children,[23] but public reporting reveals that one contractor does not.[24] One of the most frequently used hotels was the Hampton Inn in McAllen, Texas—contractors have used the hotel at least 123 times.[25] When TCRP discovered that possibly hundreds of children were at the Hampton Inn, a TCRP attorney attempted to provide children held there with legal assistance but was aggressively turned away by contractors who refused to identify themselves or whom they were working for.[26]

## II. TCRP's and ICAP's Requests

16. On June 24, 2020, TCRP submitted FOIA requests to ICE and DHS seeking records relating to, among other things, Title 42 and Operation CAPIO; the treatment of unaccompanied children; formal agreements between the U.S. and foreign countries to accept individuals expelled

---

[21] *See* Dickerson, *supra* note 2.
[22] *Id.*
[23] Dickerson, *supra* note 2.
[24] Caitlin Dickerson, *A Private Security Company Is Detaining Migrant Children at Hotels*, New York Times, Aug. 16, 2020, *available at* www.nytimes.com/2020/08/16/us/migrant-children-hotels-coronavirus.html?referringSource=articleShare.
[25] *Id.*
[26] Texas Civil Rights Project (TXCivilRights), "BREAKING: Our Attorney was aggressively rejected from trying to offer help to immigrant children illegally detained at a Hampton Inn in McAllen, TX. He and another of our staffer were violently shoved into the hotel elevator and were told they could not offer help. #FreeThemALL!," July 23, 2020, *available at* twitter.com/TXCivilRights/status/1286445319056654336?s=20.

pursuant to Title 42; statistics on how many people have been expelled and to where they were expelled; the identity of private contractors who detain children under CAPIO; and all locations where children processed under CAPIO are kept. In both requests, TCRP requested a fee waiver and expedited processing. The requests were delivered on June 29, 2020. They are attached here as Exhibits A and B.

17. ICE has acknowledged receipt of TCRP's FOIA and assigned it case numbers 2020-HQFO-01577 and 2020-ICFO-78204. DHS has not yet acknowledged receipt of the FOIA request TCRP sent it.

18. On May 21, 2020, ICAP submitted a FOIA request to CBP seeking records of the standard(s), guideline(s), and rule(s) that govern what legal process unaccompanied minors are afforded. ICAP requested a fee waiver. The request is attached here as Exhibit C. CBP received ICAP's FOIA request and assigned it case number CBP-OC-2020-055431.

19. The Freedom of Information Act requires an agency that has received a records request to determine, within 20 business days of receipt of the request, "whether to comply with [the] request" and to "immediately notify the person making [the] request of . . . [the] determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(i).

20. To date, DHS, ICE, and CBP have all failed to communicate whether they will comply with TCRP and ICAP's requests.[27] All three agencies have therefore violated the applicable time limits.[28]

---

[27] ICE's acknowledgement granted TCRP's request for a fee waiver, but did not determine whether ICE would produce records.

[28] An initial acknowledgement of receipt ICAP's request stated, "Although CBP's goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances pursuant to 6 C.F.R. Part 5 § 5.5(c). [As your request seeks documents that will require a thorough and wide-ranging search, CBP will invoke a 10-day extension for your request pursuant to 6 C.F.R. Part 5 § 5.5(c). If you would like to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.] OR [As your request seeks a voluminous amount of separate and distinct records, CBP will invoke a 10-day extension for your request pursuant to 6 C.F.R. Part 5 § 5.5(c)." It is unclear if

21. DHS, ICE, and CBP's failure to respond constitutes constructive denial of the request. This denial is without legal justification.

## CAUSES OF ACTION

### COUNT I
### Violation of FOIA
### Plaintiff TCRP against DHS

22. Plaintiffs re-allege and incorporate the foregoing allegations.

23. Defendant DHS has failed to respond to TCRP's request within the statutory deadline.

24. Defendant DHS has wrongfully withheld records responsive to TCRP's request.

25. Because of Defendant DHS' failure to timely respond to TCRP's request, TCRP's obligation to exhaust administrative remedies is satisfied. 5 U.S.C. § 552(a)(6)(C)(i).

### COUNT II
### Violation of FOIA
### Plaintiff TCRP against ICE

26. Plaintiffs re-allege and incorporate the foregoing allegations.

27. Defendant ICE has failed to respond to TCRP's request, assigned case number 2020-HQFO-01577, within the statutory deadline.

28. Defendant ICE has wrongfully withheld records responsive to TCRP's request.

29. Because of Defendant ICE's failure to timely respond to TCRP's request, TCRP's obligation to exhaust administrative remedies is satisfied. 5 U.S.C. § 552(a)(6)(C)(i).

---

CBP intended to invoke a 10-day extension through the use of this boilerplate language. Even if it did, the extended deadline has now passed.

## COUNT III
### Violation of FOIA
### Plaintiff ICAP against CBP

30. Plaintiffs re-allege and incorporate the foregoing allegations.

31. Defendant CBP has failed to respond to ICAP's request, assigned case number CBP-OC-2020-055431, within the statutory deadline.

32. Defendant CBP has wrongfully withheld record(s) responsive to ICAP's requests. Specifically, CBP has withheld record(s) that contain the standard(s), rule(s), or guideline(s) that CBP applies to determine whether unaccompanied minors are expelled or given legal process and that CBP public affairs specialist Matthew Dyman referenced in the New York Times article *10 Years Old, Tearful and Confused After a Sudden Deportation* by Caitlin Dickerson. *See supra* note 2. This Count does not seek additional records requested in other components of ICAP's FOIA request.

33. Because of Defendant CBP's failure to timely respond to ICAP's requests, ICAP's obligation to exhaust administrative remedies is satisfied. 5 U.S.C. § 552(a)(6)(C)(i).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

A. Order Defendants DHS, ICE, and CBP to promptly process Plaintiffs' requests and disclose responsive agency records;

B. Award Plaintiffs costs and reasonable attorneys' fees;

C. Order Defendants to grant Plaintiffs' requests for fee waivers; and

D. Grant such other relief as the Court may deem just and proper.

Dated: August 27, 2020                                    Respectfully submitted,

/s/ Robert D. Friedman
Robert D. Friedman
D.C. Bar No. 1046738

9

Institute for Constitutional
  Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
Fax: 202-662-9248
rdf34@georgetown.edu