# EXHIBIT A




P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

June 24, 2020

7017 2620 0000 8151 7085

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009

7017 2620 0000 8151 7092

Department of Homeland Security
Chief Privacy Officer
Privacy Office, Mail Stop 0655
2707 Martin Luther King Jr. Ave. SE
Washington, DC 20528-065

**RE: FOIA Request for Records Held by U.C. Immigration & Customs Enforcement (ICE)**

Dear Freedom of Information Act Officer:

This letter is a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Texas Civil Rights Project (TCRP). TCRP seeks records pertaining to four of the Trump Administration's new programs for processing asylum seekers. TCRP seeks a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11(k), and expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(d). The justification for the fee waiver and expedited processing are set out in detail following the request.

**BACKGROUND**

Beginning on May 31, 2019, the United States signed Asylum Cooperative Agreements with Guatemala, Honduras, and El Salvador.[1] Pursuant to those agreements, the Department of Homeland Security (DHS) and its components Immigration and Customs Enforcement (ICE), and Customs and Border Patrol (CBP) sends asylum seekers to one of those three countries, thus denying them the opportunity to seek asylum in the United States.

In October 2019, DHS and the Department of Justice (DOJ) began implementing the Humanitarian Asylum Review Process (HARP) and Prompt Asylum Review program (PACR) programs. Those programs are essentially identical, except that HARP applies exclusively to Mexican nationals, while PACR applies to individuals from other countries. Both programs entail detaining asylum seekers in CBP facilities, quickly conducting credible fear screenings, and then removing them—thus denying immigrants the opportunity to apply for asylum in the United States.

---

[1] U.S. Department of Homeland Security, *Fat Sheet: DHS Agreements with Guatemala, Honduras, and El Salvador*, https://www.dhs.gov/sites/default/files/publications/19_1028_opa_factsheet-northern-central-america-agreements_v2.pdf.




P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

On March 20, 2020, the Trump Administration issued an executive order prohibiting entry into the United States of undocumented individuals apprehended near the U.S. border,[2] allegedly due to concerns that these individuals pose a risk of spreading COVID-19 infection.[3] That Order was extended on April 20, 2020, and, on May 19, 2020, it was extended indefinitely.[4] This Order created what are called Title 42 Expulsions, wherein CBP and its partners immediately expel immigrants to their last country of last transit, or, when expulsion to that county is not possible, to their home country. CBP's enforcement of Title 42 expulsions is known as "Operation CAPIO," or "COVID-19 CAPIO."[5] The effect of this program is to completely deny most immigrants entering the United States the possibility of applying for asylum in the United States.

To comply with United States and international law, these four programs—ACA, HARP, PACR, and Title 42 Expulsions—must contain protections that protect individuals from being sent to countries wherein they face a credible threat of persecution or torture. Remarkably little information is known about these protections. The little information that exists suggests that the processes currently in place do not sufficiently protect immigrants from the danger of being sent to country wherein their lives are threatened.

The purpose of this FOIA is to acquire more information about these four programs generally, and, specifically, the processes within those programs to protect individuals from the danger of torture or persecution after they are removed, expelled, or deported from the United States.

**DEFINITIONS**

For purposes of this request, "communications" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings,

---

[2] Robert R. Redfield, U.S. Department of Health and Human Services, *Order Under Sections 362 & 365 of the Public Health Service Act (42 U.S.C. §§ 265, 268): Amendment and Extension of Order Suspending Introduction of Certain Persons from Countries where a Communicable Disease Exists* (May 19, 2020), https://www.cdc.gov/quarantine/pdf/CDC-265-Order-Renewal_5-19-20-p.pdf.

[3] U.S. Customs and Border Protection, *Nationwide Enforcement Encounters: Title 8 Enforcement Actions and Title 42 Expulsions*, https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/title-8-and-title-42-statistics.

[4] Robert R. Redfield, U.S. Department of Health and Human Services, *Order Under Sections 362 & 365 of the Public Health Service Act (42 U.S.C. §§ 265, 268): Amendment and Extension of Order Suspending Introduction of Certain Persons from Countries where a Communicable Disease Exists* (May 19, 2020), https://www.cdc.gov/quarantine/pdf/CDC-265-Order-Renewal_5-19-20-p.pdf.

[5] Dara Lind, *Leaked Border Patrol Memo Tells Agents to Send Migrants Back Immediately--- Ignoring Asylum Law*, PROPUBLICA, Apr. 2, 2020, https://www.propublica.org/article/leaked-border-patrol-memo-tells-agents-to-send-migrants-back-immediately-ignoring-asylum-law.




P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voicemail messages.

For purposes of this request, the term "documents" has the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of the federal agency or agencies that are the subject of this request and their employees, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

For purposes of this request, "records" include both "documents" and "communications," as defined above.

For purposes of this request, "fear-screening interview" means any questioning or evaluation by a U.S. government employee to determine if an individual faces a threat of persecution or torture if sent to a foreign country. It therefore includes "credible fear interviews," and "non-refoulement interviews."

"Title 42," "Title 42 Expulsion program," "Title 42 expulsions" refer to the program of expelling individuals from the United States pursuant to any *Order Suspending Introduction of Certain Persons from Countries where a Communicable Disease Exists.*[6]

"ACA" refers to any of the "Asylum Cooperation Agreements" that the United States has entered into with a foreign country.

**RECORDS REQUESTED**

---

[6] Robert R. Redfield, U.S. Department of Health and Human Services, *Order Under Sections 362 & 365 of the Public Health Service Act (42 U.S.C. §§ 265, 268): Amendment and Extension of Order Suspending Introduction of Certain Persons from Countries where a Communicable Disease Exists* (May 19, 2020), https://www.cdc.gov/quarantine/pdf/CDC-265-Order-Renewal_5-19-20-p.pdf.




P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

1. Any records describing ICE's role in the ACA program, the HARP program, the PACR program, or the Title 42 expulsion program.

2. Any records reflecting the number and nationalities of individuals who have been removed, deported, or expelled from the United States through the ACA program, the HARP program, the PACR program, or the Title 42 expulsion program.

3. Copies of any contracts between ICE and private transportation providers that assist in transporting individuals subjected to the ACA program, the HARP program, the PACR program, or the Title 42 expulsion program.

4. Any records reflecting ICE's transportation practices for individuals subjected to the HARP program, the PACR program, or the Title 42 expulsion program.

5. All communications and documents containing the terms "Operation CAPIO" or "COVID-19 CAPIO".

6. Any records or communications establishing procedures for deciding whether individuals will be processed through the ACA, HARP, PACR, or Title 42 programs.

7. Interagency agreements between ICE and CBP, EOIR, or CBP regarding the ACA, HARP, PACR, or Title 42 expulsion programs.

**THE REQUESTOR**

**The Texas Civil Rights Project (TCRP)** is a non-profit, 501(c)(3) and nonpartisan organization committed to ensuring civil rights and the protection of law within Texas. Since its founding in 1990, TCRP has fought for the rights of Texans with disabilities, immigrants, workers, and more. TCRP publishes press releases, opinion pieces, reports, and policy papers. TCRP experts are often quoted in national publications.[7] TCRP disseminates information through its website, txcivilrights.org.

Accordingly, TCRP is a "representative of the news media" within the meaning of the statute and applicable regulations. *See* 5 U.S.C. § 552(a)(4)(A)(iii) (defining a representative of the news media as an entity that "gathers information of potential interest to a segment of the public" and "uses its editorial skills to turn raw materials into a distinct work, and distributes that works to an audience"); *see also National Sec. Archive v. Dep't of Def.*, 880 F.2d 1381, 1397 (D.C. Cir.

---

[7] *See, e.g.*, NPR, *Looking at Lasting Effects of Trump's Family Separation Policy at the Southern Border*, Jan. 1, 2020, https://www.npr.org/2020/01/01/792916538/looking-at-lasting-effects-of-trumps-family-separation-policy-at-the-southern-bo.




P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

1989) (same); *Electronic Privacy Information Center v. Dep't of Def.*, 241 F. Supp. 2d 5 (D.D.C. 2003) (nonprofit organizations that gather information and publish it in newsletters and otherwise for general distribution qualified as representative of news media for purpose of limiting fees). Courts have reaffirmed that nonprofit requestors who are not traditional news media outlets can qualify as representatives of the news media for the purposes of the FOIA, including after the 2007 amendments to FOIA. See *ACLU of Washington v. Dep't of Justice*, No. C09-0642RSL, 2011 Wl887731, at *10 (D. Wash. Mar. 10, 2011) (finding that the ACLU qualifies as a "representative of the news media").

**EXPEDITED PROCESSING**

TCRP requests Track 1 expedited treatment for this FOIA request, pursuant to 5 U.S.C. § 552(a)(6)(E), because TCRP has a "compelling need" for the requested information.

First, TCRP has a "compelling need" for the requested records because TCRP is "primarily engaged in disseminating information," and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). The relevant Federal Government activity is the government's practice of deporting, expelling, or removing individuals to countries that threaten those individuals' lives. It is crucial for the public to understand how these programs function, to determine if the U.S. government is placing asylum-seeking individuals in danger. As detailed above, TCRP has the ability and intention to widely disseminate the requested information through a variety of sources, including reports, newsletters, news briefings, and other materials, to the public at no cost. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

Second, denial of expedited processing of this request could "reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I); 6 C.F.R. § 5.5(d)(1)(i). Since the COVID pandemic has begun, the government has expelled tens of thousands of individuals, while giving those individuals little to no opportunity to express their credible fears of returning to those countries. The requested records are essential to fully understand the government's complicity in sending asylum seekers to peril. Disclosure of the requested information will allow TCRP and other organizations to take actions to assist these asylum seekers.

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi) and 6 C.F.R. § 5.5(d)(3).

**FEE WAIVER REQUEST**




P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

TCRP requests that any fees associated with responding to this FOIA request be waived. Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." TCRP also requests a waiver or reduction or fees because TCRP is a "representative[] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 6 C.F.R. § 5.11(d)(1).

First, disclosure pursuant to this Request is in the public interest for the reasons described above in the Expedited Processing Request. Namely, the records requested will shed light on new immigration procedures that place immigrants at grave threat of harm, and eliminate their right to seek asylum in the United States. Given the Trump Administration's vocal attacks on immigrants and asylum seekers, the public has a significant interest in learning whether the Administration's programs are effective in their intended aims and whether they are violating the domestic and international rights of tens of thousands of asylum seekers. In sum, the information requested is "likely to contribute significantly to public understanding of the operations of the government." 5 U.S.C.§§ 552(a)(4)(A)(iii).

Second, disclosure is not primarily in the commercial interest of TCRP. TCRP is a 501(c)(3) nonprofit organization with no commercial interest. TCRP obtains information about governmental activity and uses such information to create, publish, and distribute unique newsletters and reports discussing the implications of new policies and aggregate data on behalf of the interest of the public.

Third and last, for the reasons described above in "The Requester" section of this request, TCRP qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

In the event that TCRP is denied for a waiver of search and/or duplication fees please contact us before any such costs are incurred, in order to prioritize search and duplication efforts.

**FORMAT OF PRODUCTION**

We request that all documents be produced electronically, preferably in searchable pdf format or workable format such as Microsoft Excel. In the event that such production would cause delay, we request to be contacted to help facilitate record production within the statutory time limit. *Please also provide a glossary or other descriptive records containing definitions of acronyms, numerical codes or terms contained in data responsive to this request, if those terms are not in the form template or publicly defined.*

* * *




P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

Thank you for your consideration of this request. If this request is denied in whole or in part, we ask that the government justify all redactions by reference to specific FOIA exemptions. We look forward to your response to our request for expedited processing within 10 business days, as required under 5 U.S.C. § 552(a)(6)(E)(ii)(I). Please furnish all responsive records and responses to:

Erin Thorn Vela
Texas Civil Rights Project
P.O. Box 219
Alamo, TX 78516
Tel: 956 787 8171, ext. 127
erin@texascivilrightsproject.org

If you have any questions about this request, please contact Erin Thorn Vela immediately.

Respectfully,

Andrew Udelsman w/ perm. ETV

Andrew Udelsman
Texas Civil Rights Project
P.O. Box 219
Alamo, TX 78516
Tel: 786.390.2698
andy@texascivilrightsproject.org

P.O. Box 219
Alamo, TX 78516




U.S. Immigration and
Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

US Immig. & Customs Enforc.
Freedom of Info. Act Office
500 12th St. SW, Stop 5009
Washington, DC 20536

9590 9402 3764 8032 6402 63

2. Article Number *(Transfer from service label)*

7017 2620 0000 8151 7085

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS

U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

WASHINGTON, DC 20536
OFFICIAL USE

7017 2620 0000 8151 7085

Certified Mail Fee $3.55
$ $2.85
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $0.00
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $ $0.00
☐ Adult Signature Restricted Delivery $

0516
09

Postmark Here

06/24/2020

Postage $1.20
$
Total Postage and Fees $7.60
$

Sent To US Immig & Customs Enforcement
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

PO BOX 219
Alamo, TX 78516

CERTIFIED MAIL®

7017 2620 0000 8151 7092

Department of Homeland Security
Chief Privacy Officer
Privacy Office, Mail Stop 0655
2707 Martin Luther King, Jr. Ave SE
Washington, DC 20528

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dept. of Homeland Security
Chief Privacy Officer
Privacy Office, mail stop 0655
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528

9590 9402 3764 8032 6402 56

2. Article Number *(Transfer from service label)*

7017 2620 0000 8151 7092

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

7017 2620 0000 8151 7092

U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

WASHINGTON, DC 20528 OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $3.55 | 0516 09 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.85 | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $1.20 | |
| Total Postage and Fees | $7.60 | 06/24/2020 |

Sent To Dept. of Homeland Security

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

ALERT: DUE TO LIMITED TRANSPORTATION AVAILABILITY AS A RESULT OF NATIONWIDE CO...

# USPS Tracking®

FAQs >

Track Another Package +

Remove ×

**Tracking Number:** 70172620000081517085

Your item was delivered to the front desk, reception area, or mail room at 8:19 am on June 29, 2020 in WASHINGTON, DC 20536.

## Delivered

June 29, 2020 at 8:19 am
Delivered, Front Desk/Reception/Mail Room
WASHINGTON, DC 20536

**Get Updates**

Feedback

**Text & Email Updates**

**Tracking History**

**June 29, 2020, 8:19 am**
Delivered, Front Desk/Reception/Mail Room
WASHINGTON, DC 20536
Your item was delivered to the front desk, reception area, or mail room at 8:19 am on June 29, 2020 in WASHINGTON, DC 20536.

**June 27, 2020, 10:14 am**
Available for Pickup
WASHINGTON, DC 20536