# EXHIBIT B



**TEXAS**
**CIVIL RIGHTS**
**PROJECT**

P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

June 24, 2020

Chief Privacy Officer
Privacy Office, Mail Stop 0655
Department of Homeland Security
2707 Martin Luther King Jr. Ave. SE
Washington, DC 20528-065

7017 2620 0000 8151 7115

**RE: FOIA Request for Records Held by Department of Homeland Security (DHS)**

Dear Freedom of Information Act Officer:

This letter is a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Texas Civil Rights Project (TCRP). TCRP seeks records pertaining to four of the Trump Administration's new programs for processing asylum seekers. TCRP seeks a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11(k), and expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(d). The justification for the fee waiver and expedited processing are set out in detail following the request.

**BACKGROUND**

Beginning on May 31, 2019, the United States signed Asylum Cooperative Agreements with Guatemala, Honduras, and El Salvador.[1] Pursuant to those agreements, the Department of Homeland Security (DHS) and its components Immigration and Customs Enforcement (ICE), and Customs and Border Patrol (CBP) sends asylum seekers to one of those three countries, thus denying them the opportunity to seek asylum in the United States.

In October 2019, DHS and the Department of Justice (DOJ) began implementing the Humanitarian Asylum Review Process (HARP) and Prompt Asylum Review program (PACR) programs. Those programs are essentially identical, except that HARP applies exclusively to Mexican nationals, while PACR applies to individuals from other countries. Both programs entail detaining asylum seekers in CBP facilities, quickly conducting credible fear screenings, and then removing them—thus denying immigrants the opportunity to apply for asylum in the United States.

On March 20, 2020, the Trump Administration issued an executive order prohibiting entry into the United States of undocumented individuals apprehended near the U.S. border,[2] allegedly due

---

[1] U.S. Department of Homeland Security, *Fat Sheet: DHS Agreements with Guatemala, Honduras, and El Salvador*, https://www.dhs.gov/sites/default/files/publications/19_1028_opa_factsheet-northern-central-america-agreements_v2.pdf.

[2] Robert R. Redfield, U.S. Department of Health and Human Services, *Order Under Sections 362 & 365 of the Public Health Service Act (42 U.S.C. §§ 265, 268): Amendment and Extension of Order Suspending Introduction of Certain Persons from Countries where a Communicable Disease Exists* (May 19, 2020),



**TEXAS CIVIL RIGHTS PROJECT**

P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

to concerns that these individuals pose a risk of spreading COVID-19 infection.[3] That Order was extended on April 20, 2020, and, on May 19, 2020, it was extended indefinitely.[4] This Order created what are called Title 42 Expulsions, wherein CBP and its partners immediately expel immigrants to their last country of last transit, or, when expulsion to that county is not possible, to their home country. CBP's enforcement of Title 42 expulsions is known as "Operation CAPIO," or "COVID-19 CAPIO."[5] The effect of this program is to completely deny most immigrants entering the United States the possibility of applying for asylum in the United States.

To comply with United States and international law, these four programs—ACA, HARP, PACR, and Title 42 Expulsions—must contain protections that protect individuals from being sent to countries wherein they face a credible threat of persecution or torture. Remarkably little information is known about these protections. The little information that exists suggests that the processes currently in place do not sufficiently protect immigrants from the danger of being sent to a country wherein their lives are threatened.

The purpose of this FOIA is to acquire more information about these four programs generally, and, specifically, the processes within those programs to protect individuals from the danger of torture or persecution after they are removed, expelled, or deported from the United States.

**DEFINITIONS**

For purposes of this request, "communications" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voicemail messages.

---

https://www.cdc.gov/quarantine/pdf/CDC-265-Order-Renewal_5-19-20-p.pdf.
[3] U.S. Customs and Border Protection, *Nationwide Enforcement Encounters: Title 8 Enforcement Actions and Title 42 Expulsions*, https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/title-8-and-title-42-statistics.
[4] Robert R. Redfield, U.S. Department of Health and Human Services, *Order Under Sections 362 & 365 of the Public Health Service Act (42 U.S.C. §§ 265, 268): Amendment and Extension of Order Suspending Introduction of Certain Persons from Countries where a Communicable Disease Exists* (May 19, 2020), https://www.cdc.gov/quarantine/pdf/CDC-265-Order-Renewal_5-19-20-p.pdf.
[5] Dara Lind, *Leaked Border Patrol Memo Tells Agents to Send Migrants Back Immediately--- Ignoring Asylum Law*, PROPUBLICA, Apr. 2, 2020, https://www.propublica.org/article/leaked-border-patrol-memo-tells-agents-to-send-migrants-back-immediately-ignoring-asylum-law.

<a>
</a>
<a>
</a>



**TEXAS CIVIL RIGHTS PROJECT**

P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

For purposes of this request, the term "documents" has the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of the federal agency or agencies that are the subject of this request and their employees, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

For purposes of this request, "records" include both "documents" and "communications," as defined above.

For purposes of this request, "fear-screening interview" means any questioning or evaluation by a U.S. government employee to determine if an individual faces a threat of persecution or torture if sent to a foreign country. It therefore includes "credible fear interviews," and "non-refoulement interviews."

"Title 42," "Title 42 Expulsion program," "Title 42 expulsions" refer to the program of expelling individuals from the United States pursuant to any *Order Suspending Introduction of Certain Persons from Countries where a Communicable Disease Exists*.[6]

"ACA" refers to any of the "Asylum Cooperation Agreements" that the United States has entered into with a foreign country.

**RECORDS REQUESTED**

### I.  Records related to Asylum Cooperation Agreements (ACA)

1. Records sufficient to show the following statistics:

---

[6] Robert R. Redfield, U.S. Department of Health and Human Services, *Order Under Sections 362 & 365 of the Public Health Service Act (42 U.S.C. §§ 265, 268): Amendment and Extension of Order Suspending Introduction of Certain Persons from Countries where a Communicable Disease Exists* (May 19, 2020), https://www.cdc.gov/quarantine/pdf/CDC-265-Order-Renewal_5-19-20-p.pdf.



TEXAS
—*—
CIVIL RIGHTS
PROJECT

P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

    a. The total number of individuals deemed subjected to ACA processing (disaggregated by ACA country—i.e., Guatemala, Honduras, El Salvador, Canada, etc.);

    b. The total number of individuals processed as part of an ACA, by week, by port of entry at which the individual was returned to an ACA country;

    c. The total number of individuals who were subjected to ACA processing and affirmatively expressed fear of removal to that ACA country (disaggregated by ACA country);

    d. The number of positive ACA fear screening determinations (disaggregated by ACA country);

    e. The number of negative ACA fear screening determinations (disaggregated by ACA country);

    f. Outcomes of individuals who were removed from the ACA program because they established fear of removal. I.e., records sufficient to show how many of those individuals were detained in the United States, released on bond or parole, placed into MPP or PACR programs, or other.

    g. The total number of individuals who were removed to Guatemala, Honduras, and El Salvador, or another country pursuant to an ACA (disaggregated by ACA country).

2. The following records:

    a. **Annexes** to the "Agreement between the Government of the United States and the Government of the Republic of Guatemala on Cooperation in the Examination of Protection Claims" (signed July 26, 2019).

    b. "**Agreement** between the Government of the United States of America and the Republic **of El Salvador** for Cooperation in the Examination of Protection Claims" (signed Sept. 20, 2019), including all annexes.

    c. "**Memorandum of Cooperation** between the Department of Homeland Security of the United States of America and the Ministry of Government of the Republic of **Guatemala** on Security Activities that Make it Possible to Address Irregular Immigration (signed May 31, 2019).

    d. "**Memorandum of Cooperation** between the Department of Homeland Security of the United States of America and the Ministry of Government of the Republic of **Honduras** on Security Activities that Make it Possible to Address Irregular Immigration" (signed Sept. 27, 2019).

    e. "**Memorandum of Cooperation** between the Department of Homeland Security of the United States of America and the Ministry of Justice and Security of the



TEXAS CIVIL RIGHTS PROJECT

P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

    Republic of **El Salvador** on Security Activities that Make it Possible to Address Irregular Immigration" (signed Oct. 28, 2019).

   f. "US-Guatemala Asylum Cooperation Agreement (ACA) **Threshold Screening— Guidance** for Asylum Officers and Asylum Office Staff" (11/19/2019).

   g. Any other final agreements, protocols, or other binding documents between the U.S. government and a foreign government relating to the ACA program.

## II.   Records related to Humanitarian Asylum Review Process (HARP)

1. Any final agreements, protocols, or other binding documents between the U.S. government and the Mexican government regarding the HARP program.

2. Records sufficient to show the following statistics:

    a. The total number of individuals subjected to HARP processing, by week, by port of entry;
    b. The total number of individuals who were subjected to HARP processing and affirmatively expressed fear of removal to Mexico;
    c. The number of positive HARP fear screening determinations;
    d. The number of negative HARP fear screening determinations;
    e. Outcomes of individuals who were removed from the HARP program because they established fear of removal. I.e., records sufficient to show how many of those individuals were detained in the United States, released on bond or parole, placed into MPP or ACA programs, or other;
    f. The total number of individuals who were removed to Mexico pursuant to HARP.

## III.   Records related to Prompt Asylum Claim Review (PACR)

1. Any final agreements, protocols, or other binding documents between the U.S. government and a foreign government regarding the PACR program.

2. Records sufficient to show the following statistics:

    a. The total number of individuals processed as part of PACR, by week, by port of entry or border patrol station;
    b. The total number of individuals subjected to PACR processing;



**TEXAS CIVIL RIGHTS PROJECT**

P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

c. The total number of individuals who were subjected to PACR processing and affirmatively expressed fear of removal to that country (disaggregated by country);

d. The number of positive PACR fear screening determinations (disaggregated by country);

e. The number of negative PACR fear screening determinations (disaggregated by country);

f. Outcomes of individuals who were removed from the PACR program because they established fear of removal. I.e., records sufficient to show how many of those individuals were detained in the United States, released on bond or parole, placed into MPP or ACA programs, or other;

g. The total number of individuals sent to a country under the HARP program, disaggregated by country to which they were sent.

## IV. Records related to Title 42 Expulsions (Operation CAPIO)

1. Any agreements with Mexico or other countries in which the foreign country agrees to accept individuals expelled pursuant to Title 42.

2. All communications and documents containing the terms "Operation CAPIO" or "COVID-19 CAPIO".

3. Records sufficient to show the following statistics:

   a. The total number of individuals processed under Title 42, by week;
   b. The total number of individuals deemed amenable for Title 42 expulsion;
   c. The total number of individuals who were processed pursuant to Title 42 expulsion procedures who affirmatively expressed a fear of returning to their country of last transit;
   d. The number of positive fear screening determinations made by a CBP officer (disaggregated by country to which the immigrant fears return);
   e. The number of negative fear screening determinations made by a CBP officer (disaggregated by country to which the immigrant fears return);
   f. The number of times that a case was presented to a chief patrol agent to determine if an individual should be exempt from Title 42 expulsion;
   g. The number of times that a chief patrol agent approved a request to exempt an individual for Title 42 expulsion, and the number of times that a chief patrol agent denied such a request;
   h. Outcomes of individuals who were removed from Title 42 expulsion because they established fear of removal. I.e., records sufficient to show how many of those individuals were detained in the United States, released on bond or parole, placed into MPP or ACA programs, or other.



**TEXAS CIVIL RIGHTS PROJECT**

P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

   i. The total number of individuals expelled pursuant to the Title 42 Order, disaggregated by country to which they were sent.

**V.   Other Records**

1. Any records or communications establishing procedures for deciding whether individuals will be processed through the ACA, HARP, PACR, or Title 42 expulsion programs.

2. All communications from DHS to CBP, EOIR, or ICE regarding the ACA, HARP, PACR, or Title 42 expulsion programs.

**THE REQUESTOR**

**The Texas Civil Rights Project (TCRP)** is a non-profit, 501(c)(3) and nonpartisan organization committed to ensuring civil rights and the protection of law within Texas. Since its founding in 1990, TCRP has fought for the rights of Texans with disabilities, immigrants, workers, and more. TCRP publishes press releases, opinion pieces, reports, and policy papers. TCRP experts are often quoted in national publications.[7] TCRP disseminates information through its website, txcivilrights.org.

Accordingly, TCRP is a "representative of the news media" within the meaning of the statute and applicable regulations. *See* 5 U.S.C. § 552(a)(4)(A)(iii) (defining a representative of the news media as an entity that "gathers information of potential interest to a segment of the public" and "uses its editorial skills to turn raw materials into a distinct work, and distributes that works to an audience"); *see also National Sec. Archive v. Dep't of Def.*, 880 F.2d 1381, 1397 (D.C. Cir. 1989) (same); *Electronic Privacy Information Center v. Dep't of Def.*, 241 F. Supp. 2d 5 (D.D.C. 2003) (nonprofit organizations that gather information and publish it in newsletters and otherwise for general distribution qualified as representative of news media for purpose of limiting fees). Courts have reaffirmed that nonprofit requestors who are not traditional news media outlets can qualify as representatives of the news media for the purposes of the FOIA, including after the 2007 amendments to FOIA. See *ACLU of Washington v. Dep't of Justice*, No. C09-0642RSL, 2011 Wl887731, at *10 (D. Wash. Mar. 10, 2011) (finding that the ACLU qualifies as a "representative of the news media").

**EXPEDITED PROCESSING**

---

[7] *See, e.g.*, NPR, *Looking at Lasting Effects of Trump's Family Separation Policy at the Southern Border*, Jan. 1, 2020, https://www.npr.org/2020/01/01/792916538/looking-at-lasting-effects-of-trumps-family-separation-policy-at-the-southern-bo.



P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

TCRP requests Track 1 expedited treatment for this FOIA request, pursuant to 5 U.S.C. § 552(a)(6)(E), because TCRP has a "compelling need" for the requested information.

First, TCRP has a "compelling need" for the requested records because TCRP is "primarily engaged in disseminating information," and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). The relevant Federal Government activity is the government's practice of deporting, expelling, or removing individuals to countries that threaten those individuals' lives. It is crucial for the public to understand how these programs function, to determine if the U.S. government is placing asylum-seeking individuals in danger. As detailed above, TCRP has the ability and intention to widely disseminate the requested information through a variety of sources, including reports, newsletters, news briefings, and other materials, to the public at no cost. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

Second, denial of expedited processing of this request could "reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I); 6 C.F.R. § 5.5(d)(1)(i). Since the COVID pandemic has begun, the government has expelled tens of thousands of individuals, while giving those individuals little to no opportunity to express their credible fears of returning to those countries. The requested records are essential to fully understand the government's complicity in sending asylum seekers to peril. Disclosure of the requested information will allow TCRP and other organizations to take actions to assist these asylum seekers.

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi) and 6 C.F.R. § 5.5(d)(3).

**FEE WAIVER REQUEST**

TCRP requests that any fees associated with responding to this FOIA request be waived. Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." TCRP also requests a waiver or reduction or fees because TCRP is a "representative[] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 6 C.F.R. § 5.11(d)(1).

First, disclosure pursuant to this Request is in the public interest for the reasons described above in the Expedited Processing Request. Namely, the records requested will shed light on new



**TEXAS CIVIL RIGHTS PROJECT**

P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

immigration procedures that place immigrants at grave threat of harm, and eliminate their right to seek asylum in the United States. Given the Trump Administration's vocal attacks on immigrants and asylum seekers, the public has a significant interest in learning whether the Administration's programs are effective in their intended aims and whether they are violating the domestic and international rights of tens of thousands of asylum seekers. In sum, the information requested is "likely to contribute significantly to public understanding of the operations of the government." 5 U.S.C.§§ 552(a)(4)(A)(iii).

Second, disclosure is not primarily in the commercial interest of TCRP. TCRP is a 501(c)(3) nonprofit organization with no commercial interest. TCRP obtains information about governmental activity and uses such information to create, publish, and distribute unique newsletters and reports discussing the implications of new policies and aggregate data on behalf of the interest of the public.

Third and last, for the reasons described above in "The Requester" section of this request, TCRP qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

In the event that TCRP is denied for a waiver of search and/or duplication fees please contact us before any such costs are incurred, in order to prioritize search and duplication efforts.

**FORMAT OF PRODUCTION**

We request that all documents be produced electronically, preferably in searchable pdf format or workable format such as Microsoft Excel. In the event that such production would cause delay, we request to be contacted to help facilitate record production within the statutory time limit. *Please also provide a glossary or other descriptive records containing definitions of acronyms, numerical codes or terms contained in data responsive to this request, if those terms are not in the form template or publicly defined.*

    \*  \*  \*

Thank you for your consideration of this request. If this request is denied in whole or in part, we ask that the government justify all redactions by reference to specific FOIA exemptions. We look forward to your response to our request for expedited processing within 10 business days, as required under 5 U.S.C. § 552(a)(6)(E)(ii)(I). Please furnish all responsive records and responses to:

    Erin Thorn Vela
    Texas Civil Rights Project
    P.O. Box 219
    Alamo, TX 78516
    Tel: 956 787 8171, ext. 127



P.O. Box 219
Alamo, TX 78516
956.787.8171, ext. 121(p)
956.787.6348(f)
texascivilrightsproject.org

erin@texascivilrightsproject.org

If you have any questions about this request, please contact Erin Thorn Vela immediately.

Respectfully,

Andrew Udelsman
Texas Civil Rights Project
P.O. Box 219
Alamo, TX 78516
Tel: 786.390.2698
andy@texascivilrightsproject.org

PO Box 219
Alamo, TX 78516

7017 2620 0000 8151 7115

Chief Privacy Officer
Privacy Office, Mail Stop 0655
Department of Homeland Security
2707 Martin Luther King, Jr. Ave. SE
Washington, DC 20528

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Chief Privacy Officer
   Privacy Office, Mail Stop 0655
   Dept. of Homeland Security
   2707 Martin Luther King Jr. Ave. SE
   Washington, DC 20528

   9590 9402 3764 8032 6402 32

2. Article Number (Transfer from service label)

   7017 2620 0000 8151 7115

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   X _____  ☐ Agent
                            ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
   ☐ Adult Signature
   ☐ Adult Signature Restricted Delivery
   ☒ Certified Mail®
   ☐ Certified Mail Restricted Delivery
   ☐ Collect on Delivery
   ☐ Collect on Delivery Restricted Delivery
   ☐ Insured Mail
   ☐ Insured Mail Restricted Delivery (over $500)

   ☐ Priority Mail Express®
   ☐ Registered Mail™
   ☐ Registered Mail Restricted Delivery
   ☒ Return Receipt for Merchandise
   ☐ Signature Confirmation™
   ☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**USPS CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

WASHINGTON, DC 20528

OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $3.55 | 0516 09 |
| Extra Services & Fees (check box, add fee as appropriate) $2.85 | |
| ☐ Return Receipt (hardcopy) $ $0.00 | |
| ☐ Return Receipt (electronic) $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery $ $0.00 | |
| ☐ Adult Signature Required $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $1.40 | |
| Total Postage and Fees $7.80 | 06/24/2020 |
| Sent To Chief Privacy Officer | |
| Street and Apt. No., or PO Box No. | |
| City, State, ZIP+4® | |

7017 2620 0000 8151 7115

PS Form 3800, April 2015 PSN 7530-02-000-9047      See Reverse for Instructions

**ALERT: DUE TO LIMITED TRANSPORTATION AVAILABILITY AS A RESULT OF NATIONWIDE CO…**

# USPS Tracking®

FAQs >

**Track Another Package +**

Remove ✕

**Tracking Number:** 70172620000081517115

Your item was delivered to the front desk, reception area, or mail room at 8:15 am on June 29, 2020 in WASHINGTON, DC 20528.

## ✓ Delivered

June 29, 2020 at 8:15 am
Delivered, Front Desk/Reception/Mail Room
WASHINGTON, DC 20528

Get Updates ∨

Feedback

---

**Text & Email Updates** ∨

---

**Tracking History** ∧

June 29, 2020, 8:15 am
Delivered, Front Desk/Reception/Mail Room
WASHINGTON, DC 20528
Your item was delivered to the front desk, reception area, or mail room at 8:15 am on June 29, 2020 in WASHINGTON, DC 20528.

---

June 27, 2020, 10:13 am
Available for Pickup
WASHINGTON, DC 20528